**TAYLOR RENTAL CORPORATION,**
Plaintiff,

v.

**FIRST CITIZENS BANK, Defendant.**

**No. CV–81–61–BLG.**

United States District Court,
D. Montana,
Billings Division.

April 30, 1982.

Rodd A. Hamman, Billings, Mont., for plaintiff.

Kenneth R. Wilson, Miles City, Mont., for defendant.

## MEMORANDUM OPINION

BATTIN, Chief Judge.

Plaintiff's motion for summary judgment raises the issue of whether a bank, possessing a security interest filed only with the county clerk and recorder, may assert priority over a previously perfected security interest of a franchiser in after-acquired inventory. For the reasons provided below, we conclude that the franchiser's security interest must have priority over the bank's security interest.

### I. FACTUAL BACKGROUND

On April 28, 1978, Mike Correll of Miles City, Montana, signed a franchise agreement with Taylor Rental Corporation, a Massachusetts corporation, to open a Taylor Rental franchise in Miles City. Soon afterwards, on June 12, 1978, Correll and Taylor Rental Corporation (hereinafter referred to as Taylor) entered into a security agreement giving Taylor a secured interest in "all inventory held for rent." Security Agreement (June 12, 1978), p. 2. Financing statements were filed with the Montana Secretary of State on June 19, 1978; June 4, 1979; July 23, 1979; and October 16, 1979.

In August of 1979, Correll leased a trencher and trailer from Ditch Witch of Billings, Montana. Correll subsequently purchased the trencher for $13,484, financing the purchase through defendant First Citizens Bank at 15.5% annual interest. A promissory note and security agreement were completed on December 13, 1979. Also on December 13, 1979, the bank filed a financing statement with the Custer Coun-

ty Clerk and Recorder. From 1979 to 1981, Correll listed the Ditch Witch trencher as part of his rental inventory and paid royalties to Taylor on all lease payments received.

Early in 1981, Correll began to have financial problems. In February 1981, Correll closed his rental franchise and gave the Ditch Witch trencher to the bank. Correll notified Taylor to take the trencher off his inventory list. When Correll closed his franchise, he owed Taylor $105,324.79. Although a portion of this debt was reduced by applying the remaining inventory to the debt, a substantial deficit remained.

In March 1981, Taylor informed the bank of Taylor's security interest and requested surrender of the trencher. For the first time, the bank recognized that its security interest might be threatened and filed a financing statement with the Secretary of State on March 13, 1981. When the bank refused to surrender the trencher, Taylor filed this action, on March 16, 1981, to recover possession of the trencher. On November 4, 1981, Taylor moved for summary judgment on the issue of priority of the two security interests. On November 30, 1981, the bank filed a brief opposing this motion on the grounds that issues of fact (as to whether Taylor had actual knowledge of the bank's security interest and as to whether Correll executed the bank loan in a personal or a business capacity) remained to be resolved. Although Taylor has filed three subsequent briefs further supporting its motion for summary judgment, the bank has filed nothing other than the single three-page brief arguing that issues of fact exist. It would thus be fair to presume that the bank concedes that Taylor's security interest has priority over the bank's security interest.

### II. NATURE OF THE BANK'S SECURITY INTEREST

In the instant case, we are called upon to determine the priority of two rival security interests, one filed with the Montana Secretary of State on June 19, 1978, and one filed initially with a county clerk and recorder on

December 13, 1979, and subsequently filed with the Secretary on March 13, 1981. The general rule on perfection of security interests would clearly require filing with the Montana Secretary of State for the trencher, which was held as business equipment for lease. Under MCA § 30–9–302(1) (1981), filing with the Secretary of State (*see* MCA § 30–9–401(1)(c) (1981)) is necessary to perfect all security interests, with six noted exceptions. The trencher held by a leasing business falls into none of those excepted categories. Since the bank's security interest was not perfected by filing with the Secretary until March 13, 1981, and since Taylor's security interest was perfected by filing with the Secretary on June 19, 1978, Taylor's security interest must prevail as prior in time to the bank's security interest. *See* MCA § 30–9–312(5)(a) (1981).

Because the bank has not filed a brief on the priority issue, we can only speculate as to what its position might be. Presumably, the bank filed a financing statement with the county clerk and recorder under the erroneous assumption that the trencher was farming equipment. "Equipment used in farming operations" can be perfected by filing a financing statement with the county clerk and recorder under MCA § 30–9–401(1)(a) (1981). Yet clearly neither Correll nor the bank contemplated that the Ditch Witch trencher would be used in a farm operation.

■ The only argument by which the bank could defeat Taylor's prior security interest would be to prove that the bank possessed a "purchase money security interest in inventory" under MCA § 30–9–312(3) (1981). A purchase money security interest in inventory would have priority even over a previously perfected security interest. However, to possess a prior purchase money security interest in inventory, the creditor must (1) perfect at the time the debtor receives possession, (2) notify creditors who have already filed security interests in the inventory, and (3) include in the notification a description of the inventory "by item or type." MCA § 30–9–312(3) (1981). In the instant case, the bank accomplished none of these things.

## II. TAYLOR'S ACTUAL KNOWLEDGE OF THE BANK'S SECURITY INTEREST

■ Although it did not brief the question, the bank seems to be relying upon certain evidence to establish Taylor's actual knowledge of the bank's security interest. Under MCA § 30–9–401(2) (1981), "a filing made in good faith in an improper place . . . is also effective with regard to collateral covered by the financing statement against any person who has knowledge of the contents of such financing statement." The bank relies upon a journal entry made in a Taylor journal sometime in December 1979. That entry records the purchase of "R–40 trencher w/trailer—Bank Loan & deferred finance charge—Financed for 3 yrs." An entry of $19,846.62 is then made in the credit column. Presumably, the bank feels that this entry is sufficient to establish knowledge of Taylor, as of December 1979, that the trencher was subject to a bank's security interest.

There are several problems with the bank's argument. First of all, it is doubtful that knowledge of an unidentified bank loan necessarily implies knowledge of a security interest by a specific bank. Second, the very most the bank could hope for would be to establish that its security interest should be deemed filed and perfected as of December 1979. This would still make the bank subject to Taylor's previously filed security interest. Establishing actual knowledge on the part of Taylor does not aid the bank at all in satisfying the requirements for a purchase money security interest in inventory under MCA § 30–9–312(3) (1981). So even if the bank can prove Taylor's knowledge of the loan to purchase the trencher, it does not affect the priority issue.

Third, Taylor points out, by brief and affidavit, that the journal entries concerning the trencher loan were made, not by Taylor, but by a computerized accounting service provided by Taylor to its fran-

chisees. The information provided to the accounting service is confidential and unavailable to Taylor credit personnel without the prior consent of the franchisee. Thus, the journal entries cannot be said to evidence knowledge on the part of Taylor of even an unidentified bank's security interest.

We therefore conclude that this case presents no issues of material fact and, pursuant to Fed.R.Civ.P. 56(c), summary judgment should issue for plaintiff Taylor.

An appropriate order shall issue in accordance with this Memorandum Opinion.